*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2003 FED App. 0354P (6th Cir.)
File Name:  03a0354p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*

ALFREDO RODRIGUEZ-SUAZO,
  *Defendant-Appellant.*

No. 01-2590

———————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-80790—Arthur J. Tarnow, District Judge.

Argued:  July 31, 2003

Decided and Filed:  October 6, 2003

Before: DAUGHTREY, MOORE, and SUTTON, Circuit
Judges.

———————

**COUNSEL**

**ARGUED:**  Francisco J. Villarruel, Detroit, Michigan, for
Appellant.  Kathleen Moro Nesi, ASSISTANT UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.
**ON BRIEF:**  Francisco J. Villarruel, Detroit, Michigan, for
Appellant.  Kathleen Moro Nesi, ASSISTANT UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.

———————

**OPINION**

———————

KAREN NELSON MOORE, Circuit Judge.  Defendant-
Appellant Alfredo Rodriguez-Suazo ("Rodriguez-Suazo")
appeals from the judgment entered against him after he
entered a conditional guilty plea to the following offenses:
reentry of deported alien in violation of 8 U.S.C. § 1326,
fraud and related activity in connection with identification
documents and information in violation of 18 U.S.C. § 1028,
and fraud and misuse of visas, permits, and other documents
in violation of 18 U.S.C. § 1546.  On appeal, Rodriguez-
Suazo argues that the search of his residence was unlawful
because the search warrant was not based on probable cause
to believe that the items listed in the warrant would be found
at the place to be searched.  Rodriguez-Suazo also argues that
the stop of his vehicle, the search of his vehicle, and his
subsequent detention violated the Constitution because the
officers lacked probable cause, and they did not have a
warrant.  Moreover, Rodriguez-Suazo contends that the
officers lacked reasonable suspicion to detain Rodriguez-
Suazo once the traffic stop failed to uncover any evidence of
criminal activity.  Finally, Rodriguez-Suazo argues that the
search warrant affidavit contained intentionally or recklessly
false information.  Thus, Rodriguez-Suazo contends that
anything he said during the search of his home and the search
of his person and effects should be suppressed as the fruit of
the poisonous tree.  We now **AFFIRM** the district court's
denial of Rodriguez-Suazo's motions to suppress.

## I. BACKGROUND

On October 31, 2000, the Detroit Police Department arrived
at 5492 Florida to execute a search warrant at Rodriguez-
Suazo's residence.  According to the police, they arrived

sometime around 1:00 p.m.[1] The search warrant identified 5492 Florida as one of two places to be searched; expressly permitted the search of a 1989 Gray GMC Sierra pickup truck bearing the Michigan license plate number 2615HR; and also authorized the search of a five-foot nine-inch Hispanic male weighing 170 pounds, with black hair and an olive complexion, and going by the name "Alfredo."[2] Thus, when

---

[1] The time of the search is a disputed factual issue. At the hearing on the motion to suppress, counsel for Rodriguez-Suazo argued that Rodriguez-Suazo was stopped by the Detroit police somewhere between 9:30 and 10:00 a.m. As a matter of deduction, then, counsel for Rodriguez-Suazo argues that at the time Rodriguez-Suazo was stopped, searched, and arrested, the police did not have the necessary probable cause because they did not obtain the search warrant until sometime later that afternoon. Joint Appendix ("J.A.") at 121 (Tr. of Mot. Hr'g). We do not consider the timing to be critical because we agree with the district court's conclusion that as long as the officers knew the information contained in the warrant at the time of the searches then they had the necessary probable cause, even without affirmation from the magistrate in the form of a warrant.

[2] Specifically, the search warrant stated the following:
***THEREFORE, IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN***, I command that you search . . . [t]he entire premises known as, 5492 Florida, located in the City of Detroit, County of Wayne, State of Michigan. . . . The entire premises known as 6071 Proctor, located in the City of Detroit, County of Wayne, State of Michigan. . . . Also to be searched:
#1 Raymie Baraza, Hispanic male, DOB 6-2-65, 5'-10", and medium build, large nose
#2 Hispanic male, 5'-9", 170 pounds, black hair, olive complexion, AKA "Alfredo"
#3 Comelio Hernandez, Hispanic, male, 32 years of age, 5'-10", 190-200 pounds, medium olive complexion, black hair, hazel eyes. AKA "Hector"
Also to be searched:
1997 Ford, Crown Victoria, 2001 Michigan plate 7EBP97, brown in color, being driven by either #1 or #3, this vehicle is equipped with aftermarket hidden compartments
1989 GMC, Sierra, pick-up, 2001 Michigan plate 2615HR, gray in color with red trim, cap on rear, being driven by either #1 or #3.

the officers arrived at 5492 Florida and observed a man, fitting the warrant's description for individual #2 and driving the GMC truck mentioned therein, the officers followed the truck and stopped it three blocks from that address. Rodriguez-Suazo produced a Michigan driver's license bearing the name Reynaldo Michel Figueroa and admitted that he was an illegal Mexican immigrant. At this point the officers seized Rodriguez-Suazo, seized his wallet and its contents, searched the truck, and confiscated his vehicle. According to Rodriguez-Suazo, he was handcuffed and in police custody for a significant amount of time.[3] Rodriguez-Suazo was never read his rights, never shown a warrant, and never told the reason for his detention.

After an unspecified amount of time, the officers returned Rodriguez-Suazo to 5492 Florida where they conducted a search of the premises. The officers possessed a search warrant that was issued in an effort to uncover a drug operation, thus the search warrant included a long list of items to be seized including: all items used in connection with drug offenses, proceeds in connection with drug offenses, passports, vehicle registrations and titles, and records reflecting residences. The home search uncovered a Mexican passport and United States visa with Rodriguez-Suazo's picture and the name Abel Izai Ledezma-Garcia. Eventually, Rodriguez-Suazo admitted that he bought these documents in

---

1990 Subaru, Legacy, gold in color, hatch back, 2001 Michigan plate RRX464
1998 Mercury, Marquis, white in color, 2001 Michigan plate RGJ072
J.A. at 21 (Br. in Supp. of Mot. to Suppress, App. A, Search Warrant).

[3] Rodriguez-Suazo contends that he was kept under police guard for over an hour and a half while the police searched the Proctor address. After that search was complete and he was interrogated, he was taken to the Florida address and was made to wait while law enforcement conducted the search of that residence.

Mexico for $2,000 and then used them to gain illegal entry intro the United States.

The factual basis for the search warrant came from a confidential informant. On October 30, 2000, the confidential informant told the affiant, Lieutenant Arthur McNamara ("McNamara")[4], that based on his observations, a man named Raymie Baraza ("Baraza") used the Proctor address to store his drugs. This same informant told the officers that based on "past observations," Baraza stores a "large amount of narcotic proceeds" at the 5492 Florida location. J.A. at 23-24 (Br. in Supp. of Mot. to Suppress, App. A, Search Warrant-Affidavit). According to the informant, Baraza stored the proceeds where he lived at 5492 Florida. In addition, the confidential informant stated that only the three individuals listed in the search warrant were allowed to enter these premises to conduct narcotic sales. A mere forty-eight hours before the signing of the affidavit and search warrant, the informant accompanied Baraza to the Proctor address so that Baraza could pick up a large amount of cocaine to distribute to another individual.

On November 8, 2000, Rodriguez-Suazo was indicted on three counts: reentry of deported alien, fraud and related activity in connection with identification documents and information, and fraud and misuse of visas, permits, and other documents. Rodriguez-Suazo filed three motions to suppress. Rodriguez-Suazo's first motion sought to suppress the evidence retrieved from the 5492 Florida address and the statements he made during and after the search because the search warrant was not based on probable cause to search him and his home when the issuing magistrate relied on an affidavit with falsified information. Rodriguez-Suazo argued

---

[4] McNamara was a member of the Detroit police force for twenty-eight years, serving the most recent fourteen years in the narcotics division. McNamara justifiably relied on this informant because he had used this same informant on more than three different occasions which resulted in over three arrests and over three convictions.

then, and on appeal, that the information relayed by the informant and incorporated into the affidavit was either falsified by the informant or by the affiant, and thus the affiant was not truthful or was reckless in his disregard for the truth by relying on the informant in the affidavit. In an attempt to refute the confidential informant's statements, Rodriguez-Suazo submitted his own affidavit stating that no male individual[5] has been to the Florida address who could have possibly observed Rodriguez-Suazo in possession of illegal drugs or large sums of money. The defendant's affidavit also contains a sworn statement that Rodriguez-Suazo does not know anyone named Raymie Baraza. A subsequent motion to suppress argued that the stop of Rodriguez-Suazo while driving in his vehicle and his eventual arrest were unlawful because the police did not have probable cause to search the vehicle or reasonable suspicion to detain Rodriguez-Suazo. That motion aimed to suppress any evidence seized from the vehicle or Rodriguez-Suazo and any statements made by Rodriguez-Suazo to the police. The final motion to suppress focused on the invalidity of the search warrant as it pertained to 5492 Florida. Rodriguez-Suazo claimed that the search warrant was issued without probable cause to believe that the items contained in the warrant would be found at the location named therein. Thus, Rodriguez-Suazo contends that the issuing magistrate abandoned his role as a neutral and detached judicial officer by issuing this entirely unsupported warrant. In the alternative, defendant argues that, despite the magistrate's authorization, no reasonable police officer would have relied on this unsubstantiated warrant.

Rodriguez-Suazo requested an evidentiary hearing to pursue these arguments further. The district court denied his request for an evidentiary hearing and suppression motions but preserved its right to reevaluate its decision if Rodriguez-

---

[5] Rodriguez-Suazo's appellate brief changes this to "no *person*" could have seen drug proceeds in storage at the Florida address.

Suazo could make a proffer that the police officers did not have a warrant at the time of their stop and search of Rodriguez-Suazo.[6] The district court also suggested that even if Rodriguez-Suazo could show that the officers did not have a warrant at the time of these events, the government nonetheless could satisfy the probable cause requirement if the officers knew of the warrant's contents when they searched Rodriguez-Suazo and his home.[7]

After he was unsuccessful in his motions to suppress evidence, Rodriguez-Suazo, pursuant to a conditional Rule 11 Plea Agreement, pleaded guilty to all three counts in the indictment. Ultimately, Rodriguez-Suazo was adjudicated guilty on each count, and on November 14, 2001, he was sentenced to twenty months' imprisonment on each count, to run concurrently. Rodriguez-Suazo now timely appeals from the district court's judgment and its order denying his motions to suppress.

---

[6]At the motion hearing, the district court asked Rodriguez-Suazo to identify the time when the search warrant was issued. Rodriguez-Suazo responded that he was unable to verify that information from the 36th District Court.

[7]Specifically, the district court stated:
[I]f you can provide me with some kind of authority that says, assuming the officers had in some form the same information that was ultimately put before the magistrate judge, that absent a search warrant did not constitute probable cause to stop this defendant, that might affect my decision on an evidentiary hearing as well, but I am operating from the assumption, from which I could be disabused of if that isn't the law, that the same information that the magistrate judge acted on if in the possession of the officers who arrested this defendant would have constituted probable cause even without a magistrate judge agreeing with them.
J.A. at 144 (Tr. of Mot. Hr'g).

## II. ANALYSIS

### A. Standard of Review

When reviewing a district court's denial of a motion to suppress evidence, we review the factual findings for clear error and the legal conclusions as to the existence of probable cause de novo. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999), *cert. denied*, 528 U.S. 1176 (2000). "It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979). "When reviewing the denial of a motion to suppress evidence, we must consider the evidence in the light most favorable to the government." *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993).

The standard of review for determining the sufficiency of the affidavit "is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991). We do not engage in de novo review of the affidavit, but "[r]ather the magistrate's probable cause determination should be afforded great deference." *Id.*; *see also United States v. Leon*, 468 U.S. 897, 914 (1984) ("[T]he preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination."). This deferential review is consistent with "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). Our determination of whether the information supporting the affidavit is stale utilizes the same standard of review as used to determine the sufficiency of an affidavit. *United States v. Canan*, 48 F.3d 954, 958-59 (6th Cir. 1995).

## B.  The Searches

The Fourth Amendment to the United States Constitution provides for the issuance of warrants based on probable cause and supported by oath or affirmation. U.S. Const. amend. IV. The Fourth Amendment requires that the warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." *Id.*  Probable cause to search is described as a "fair probability" that evidence of the crime will be found at the location to be searched. *Gates*, 462 U.S. at 238; *see also Davidson*, 936 F.2d at 860 (holding that the affidavit established a substantial basis for a probable cause finding "[b]ecause only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause"). The inquiry requires that the magistrate or judge review the totality of the circumstances "to make a practical, common-sense" determination of whether probable cause is present. *Gates*, 462 U.S. at 238. "The issuing judge or magistrate 'may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept.'" *United States v. Caicedo*, 85 F.3d 1184, 1192 (1996) (quoting *United States v. Lawson*, 999 F.2d 985, 987 (6th Cir. 1993) (internal quotation omitted)). On review, the district court will not have a basis for overturning the conclusion of the magistrate unless the magistrate did not have a "substantial basis" for determining that probable cause was present. *Gates*, 462 U.S. at 238.

The Fourth Amendment's primary purpose is to protect "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  "'The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought.'" *United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) (quoting

*Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) (internal quotation omitted)).  When law enforcement officials have acted unreasonably, the exclusionary rule exists to suppress evidence gained through unconstitutional means. *United States v. Calandra*, 414 U.S. 338, 348 (1974); *Nix v. Williams*, 467 U.S. 431, 443 (1984) ("[T]he way to ensure [constitutional and statutory] protections is to exclude evidence seized as a result of such violations notwithstanding the high social cost of letting persons obviously guilty go unpunished for their crimes."). This exclusion applies equally "to the fruits of the illegally seized evidence." *Calandra*, 414 U.S. at 347. The purpose behind exclusion is not to remedy the harm suffered by the victim of the illegal search, but rather "to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *Id.*  Thus, evidence procured through an illegal search or seizure is not automatically suppressed, but rather the applicability of certain exceptions to exclusion first are considered. *See Leon*, 468 U.S. at 906.

In *Leon*, the Supreme Court explained that the exclusionary rule "operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the person aggrieved.'"  *Id.* at 906 (internal quotation omitted).  The Court reasoned that because the rule was designed to deter police misconduct, the benefits from excluding evidence procured by objectively reasonable reliance on a later invalidated search warrant were insignificant compared to the costs of such exclusion. *Id.* at 907-08. The Court encouraged lower courts to consider the totality of the circumstances using an objective measure when assessing "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 923 n.23. Thus, the Court stated that the "evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with

knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 919 (quoting *United States v. Peltier*, 422 U.S. 531, 542 (1975)).

The *Leon* Court identified three situations in which the fruits of an illegal search could be suppressed regardless of law enforcement's reliance on a warrant issued by a magistrate. *Id.* at 923. These situations include when: (1) a warrant is based on a knowing or reckless falsity contained in the affidavit, *Leon*, 468 U.S. at 914; (2) a warrant is issued by a magistrate who abandons his judicial role by failing to be neutral and detached, instead serving as a "rubber stamp" for law enforcement, *id.*; and (3) a warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (quotation omitted). The first situation involves police misconduct appropriate for deterrence, while the second two situations are proper for exclusion because "no reasonably well-trained officer should rely on the warrant." *Savoca*, 761 F.2d at 296 (quotation omitted).

### 1. Search of 5492 Florida

Rodriguez-Suazo argues that the search of his residence violated the Fourth Amendment because the search warrant affidavit lacked sufficient facts to establish the necessary probable cause. Rodriguez-Suazo argues that the affidavit failed to establish a nexus between the items contained in the warrant and the place to be searched. He asserts that the confidential informant's statements create probable cause to search only the Proctor residence, not the Florida residence. Specifically, he raises the fact that the informant neither stated that he entered the Florida address nor described with particularity the location of the money, the way in which it was stored, or the amount he observed being stored. The informant also failed to provide a timeframe for when he saw proceeds stored at this address, thus the tip was insufficient and stale as it pertains to the Florida address. Moreover, Rodriguez-Suazo argues that even if the officers relied on a

facially-valid search warrant, the evidence should have been excluded because: (1) the warrant was based on a knowing or reckless falsehood contained in the affidavit, (2) the magistrate abandoned his role as a neutral and detached judicial officer because there were not sufficient facts to conclude that evidence of the crime would be found at 5492 Florida; and (3) the warrant was so lacking in probable cause that a reasonable officer would not have relied on it.

When reviewing the affidavit for evidence establishing probable cause, we ask whether there was a "fair probability" that any evidence would be found at the location to be searched. *Davidson*, 936 F.2d at 859 (quotation omitted); *see also Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998) ("A determination of probable cause simply requires consideration of whether there were reasonable grounds to believe at the time of the affidavit that the law was being violated on the premises to be searched."). As the Court stated in *Gates*, we approach the question using a totality of the circumstances test, to arrive at "a practical, common-sense" conclusion as to whether probable cause existed. *Gates*, 462 U.S. at 238. When the probable cause for a search warrant is based upon information provided by a confidential informant, we must consider the informant's veracity, reliability, and "basis of knowledge." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999); *see also Gates*, 462 U.S. at 230 (noting that "an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report"). Only by evaluating these factors under the fluid totality of circumstances approach, can we "ensure that the magistrate was informed of some of the underlying circumstances from which the informant concluded evidence of a crime is where he claimed it would be found, and some of the underlying circumstances from which the officer concluded that the informant . . . was reliable." *Smith*, 182 F.3d at 478. Another factor to consider is law enforcement's corroboration of the informant's tip. *Id.* The Supreme Court has stated that information provided by a proven and reliable informant, along with police corroboration of the tip, is

sufficient to establish the necessary probable cause. *McCray v. Illinois*, 386 U.S. 300, 304 (1967).

In the instant case, McNamara, the affiant, was a twenty-eight-year-veteran officer with fourteen years of service in the narcotics division. In the search warrant affidavit itself, McNamara attested to the confidential informant's reliability and credibility, citing more than three occasions when the confidential informant assisted law enforcement with information leading to more than three arrests and more than three convictions. McNamara also stated that information provided by this informant in the past has proven to be both reliable and accurate. According to McNamara, the informant stated that he or she previously had observed Baraza and Hernandez selling large quantities of cocaine. The informant also revealed that he or she had personal knowledge that Baraza stored large amounts of drug proceeds at the Florida residence on previous occasions because Baraza did not trust anyone with his money. In addition, the informant noted that only three individuals (one who fit the description of Rodriguez-Suazo) were permitted access to the Florida house, and that all of the vehicles listed in the warrant transport drugs. Most pertinently, the informant stated that, within the past forty-eight hours, the informant was at the Proctor address with Baraza, when Baraza picked up a large amount of cocaine for the purpose of selling it to another individual. McNamara further corroborated the informant's tip by acknowledging that McNamara previously had arrested Baraza for possession of three kilograms of cocaine and that a warrant was outstanding for Baraza's arrest.

Assessing the contents of the affidavit under the totality of the circumstances, we conclude that the information contained therein provided a "substantial basis" from which the magistrate could conclude that probable cause was present to search the Florida premises. *Gates*, 462 U.S. at 238. While it is true that the informant did not offer a specific timeframe for when he saw drug proceeds stored at the Florida address, the informant did state that on previous

occasions Baraza stored drug proceeds at his Florida address and that within forty-eight hours a big sale had taken place with drugs Baraza obtained from the Proctor address. From these facts, the magistrate could infer that there existed a fair probability that the proceeds from that very recent sale would be stored once again at the Florida address. *See id.* ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."); *Mays*, 134 F.3d at 814 (noting that the magistrate's determination is not overturned on appeal "unless arbitrarily exercised"). This remains true, even if the informant's tip contained erroneous information, that is, even if Baraza did not actually reside or if no drug proceeds were found at the Florida address. Moreover, Rodriguez-Suazo's staleness claim is defeated by the pattern of drug activity observed by the informant on more than one occasion. *See generally United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988) ("[R]elated events covering a broad span of time continuing to the current period may furnish a most reliable indicia of present activity, thereby clearly demonstrating that probable cause exists."); *see also United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) (concluding that evidence of ongoing criminal activity generally can defeat a staleness claim). And while the police failed independently to corroborate the informant's tip through surveillance or other means, corroboration is not always required. *See generally United States v. Allen*, 211 F.3d 970, 976 (6th Cir) (en banc), *cert. denied*, 513 U.S. 907 (2000) (holding that when the informant is known to the affiant, named to the magistrate, has proven reliability, and directly observed the criminal activity in the recent past, independent police corroboration is not required for a magistrate to determine that a probability exists that evidence of a crime will be uncovered). Based on the foregoing, we conclude that the search warrant permitting the search of the Florida residence was supported by probable cause, and thus Rodriguez-Suazo's constitutional rights were not infringed when the police searched 5492 Florida.

Even if we reached the opposite conclusion in our probable cause review — determining that the affidavit and resulting search warrant did not contain a sufficient nexus to justify the search of 5492 Florida — we nonetheless would conclude that the evidence was properly admitted pursuant to *Leon*'s good-faith-reliance exception to the exclusionary rule. In *Leon*, the Supreme Court stated that evidence generally will not be excluded where officers reasonably rely on a facially valid search warrant. *Leon*, 468 U.S. at 922. Although Rodriguez-Suazo contends otherwise, the exceptions to the *Leon* good-faith doctrine do not apply in this case.

Rodriguez-Suazo attacks the statements made by the confidential informant which secured the search warrant, arguing that no one could have observed Baraza store any drugs or money at 5492 Florida and thus that the warrant was based on intentionally or recklessly false information. Rodriguez-Suazo also contends that either the informant does not exist or McNamara falsified the information about the informant in the affidavit. Thus, McNamara either was not truthful or was reckless in his disregard for the truth by relying on the informant to swear out a warrant.

When a defendant attempts to show that an affidavit for a search warrant contained false information, the defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause," the court must conduct a hearing on the issue upon the defendant's request. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). If at the hearing, the defendant can show by a preponderance of the evidence that the affiant either knowingly or with reckless disregard included a false statement in the affidavit, then any evidence and fruits of the search would be excluded. *Id.* at 156. This substantial showing is necessary because a challenge to the veracity of the search warrant affidavit must overcome the presumption that the affidavit is valid. *Id.* at

171. The intentionally or recklessly false statement must be made by the affiant herself, not the non-governmental informant. *Id.*; *Mays*, 134 F.3d at 816 ("*Franks* recognizes that information an affiant reports may not ultimately be accurate, and is willing to tolerate such a result at that early stage of the process, so long as the affiant believed the accuracy of the statement at the time it was made.").

Thus, even if we determined that probable cause did not exist to search 5492 Florida, Rodriguez-Suazo's attack on the veracity of the confidential informant's statements would be insufficient to meet his burden for a *Franks* evidentiary hearing without a substantial showing that the affiant's statements were intentionally or recklessly false. *See United States v. Giacalone*, 853 F.2d 470, 477 (6th Cir. 1988) (holding that the defendants' affidavits did not amount to a substantial showing that the government affiant, and not the informants, made intentionally or recklessly false statements). Rodriguez-Suazo's affidavit stating that he never stored drug proceeds at 5492 Florida and that he did not know anyone named Raymie Baraza is hardly the "substantial preliminary showing" required under *Franks*. *Franks*, 438 U.S. at 155. Even if some of the information contained in the search warrant ultimately could be shown to be false, Rodriguez-Suazo provided no evidence that Officer McNamara intentionally or recklessly misrepresented facts in order to secure the search warrant. Rodriguez-Suazo's statement in his affidavit that no one had entered 5492 Florida within the forty-eight hours preceding the signing of the search warrant, even if believed, does not equate to proof that the affiant lied or was recklessly indifferent to the truth. The warrant affidavit does not suggest that the confidential informant personally saw anyone enter 5492 Florida after he witnessed the drug deal with Baraza, rather his information suggests that based on past conduct, the proceeds of the recent sale likely would be stored at the Florida address. Under these circumstances it cannot be said that the district court clearly

erred in determining that the affiant neither lied nor recklessly falsified the affidavit in order to secure a search warrant.[8]

Rodriguez-Suazo's belief that the magistrate was not neutral and detached does not require suppression of the evidence because Rodriguez-Suazo fails to offer any evidence to support this claim. *See Feldman*, 606 F.2d at 679 n.11 (stating that the defendant has the burden of proof to show that evidence should be excluded). Moreover, the exclusionary rule is designed to prevent police, not magistrate, misconduct and thus, as the Court stated in *Leon*:

> To the extent that proponents of exclusion rely on its behavioral effects on judges and magistrates in these areas, their reliance is misplaced. . . . [T]here exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. . . . [M]ost important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

*Leon*, 468 U.S. at 916 (footnotes omitted). Because the focus of this rule is to prevent police misconduct, exclusion should be ordered only if the police officer knew or should "be charged with knowledge that the search was unconstitutional under the Fourth Amendment" or that the magistrate abandoned his or her neutral and detached function. *Id.* at 919 (internal quotation omitted). In light of the extensive affidavit containing specific information personally observed

---

[8]We also do not find persuasive Rodriguez-Suazo's argument that the district court erroneously denied his request for an in-camera examination of the confidential informant. We have previously decided that we will not mandate a preliminary in camera examination of the informant simply because the defendant alleges that the affidavit contains falsehoods. *See Giacalone*, 853 F.2d at 476.

by the reliable confidential informant, there is no evidence from which we could conclude that the magistrate merely acted as a "rubber stamp" for the police officers' misconduct. *Id.* at 914.

As for his final attempt to show that the search warrant's issuance was unconstitutional, Rodriguez-Suazo contends that this situation falls within another exception to the *Leon* good-faith doctrine, that the police officers' reliance on the warrant was unreasonable because the warrant obviously was not supported by probable cause. Having concluded that the affidavit established probable cause, we do not need to reach this argument. *See Davidson*, 936 F.2d at 860.

**2. Search of the GMC Truck and Rodriguez-Suazo**

In a motion to suppress evidence and on appeal, Rodriguez-Suazo argues that his traffic stop and subsequent arrest were warrantless seizures without probable cause in violation of his Fourth Amendment rights. Rodriguez-Suazo argues that at the time of the traffic stop, the officers did not have a search warrant and that they lacked probable cause to make the stop because Rodriguez-Suazo had not violated any traffic laws. Moreover, he contends that the search of his vehicle was unlawful because he had not given the officers consent to search it. Rodriguez-Suazo continues his argument, asserting that even if the officers were permitted to make the initial stop, they did not have the necessary reasonable suspicion to detain Rodriguez-Suazo after their search failed to uncover any drugs. Because the search warrant was limited in scope to evidence of drug trafficking, once the officers failed to find any incriminating evidence of drug activity, Rodriguez-Suazo argues that they were obligated to release him.

Whether the officers had a search warrant at the time of the stop is disputed by the parties. At the hearing on the suppression motion, Rodriguez-Suazo argued that during the morning traffic stop, the officers did not yet have a search warrant and did not know the information that would be

contained therein. However, when Rodriguez-Suazo was asked by the district court whether he had any evidence to substantiate his claim, Rodriguez-Suazo admitted that he had none. Rodriguez-Suazo then explained that he needed an evidentiary hearing to pursue this claim further. In denying the motion to suppress, the district court indicated that it would reconsider the issue of whether suppression of the vehicle search was warranted if Rodriguez-Suazo could come forth with some evidence tending to show that the officers lacked a warrant at the time of the search. To date, Rodriguez-Suazo has not proffered any evidence tending to show that the officers did not have a warrant at the time of the traffic stop.[9]

Rodriguez-Suazo's arguments that this court should treat the traffic stop as a warrantless search are unpersuasive. While Rodriguez-Suazo attempts to show a constitutional violation by asserting that there was no warrant at the time of the traffic stop, he has no evidence in support of his contention, and thus, fails to meet his burden for suppression of the evidence. *See Feldman*, 606 F.2d at 679 n.11. Without any evidence to support such a claim, we cannot say that it was clear error for the district court to conclude that the officers had a search warrant at the time of the stop and search of Rodriguez-Suazo and his vehicle. *See Garza*, 10 F.3d at 1245 (noting that the court "must accept the findings of fact upon which the district court relied in dealing with suppression of evidence unless those findings are *clearly erroneous*").

Even if Rodriguez-Suazo were able to show that the officers searched him without a warrant, he has not offered any evidence to show that when the officers stopped Rodriguez-Suazo in his truck, they were not aware of all the

---

[9] Rodriguez-Suazo's own affidavit fails to substantiate his argument. His affidavit fails to state either that the vehicle search took place in the morning or that the search transpired without a warrant.

information that ultimately was included in the affidavit and the warrant. Armed with the information contained in the affidavit and warrant, the officers would have had the necessary probable cause to insulate the search from a successful suppression motion. *See generally Hill*, 195 F.3d at 273 ("One of the exceptions to the requirement that the government obtain a warrant before searching private property is the 'automobile exception,' which excuses the police from obtaining a warrant when they have probable cause to believe that a vehicle they have stopped contains evidence of a crime."). In the search warrant affidavit, McNamara claims that the informant relayed to McNamara the information regarding the recent drug sale by October 30, 2000, at the latest, which necessarily means that on the day of the search, October 31, 2000, at least McNamara was aware of its contents. *See generally United States v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976) (noting that for assessing whether probable cause exists, this court "mutually impute[s] the knowledge of all the agents working together on the scene and in communication with each other"). Based on McNamara's knowledge, it would not be clear error for the district court to conclude that the officers conducting the search were apprised of the warrant's contents when they stopped Rodriguez-Suazo.

As of result of our conclusion that the district court was not clearly erroneous in its determination that the police had a warrant, Rodriguez-Suazo's arguments that his detention was unlawful once the stop failed to reveal evidence of drug trafficking must also fail. The warrant specifically permitted the seizure of documents, including passports and records identifying his address. After turning over his driver's license with the name Reynaldo Michel Figueroa, Rodriguez-Suazo admitted that he was an illegal Mexican immigrant. Once the police had this confession, the police had probable cause to detain and arrest Rodriguez-Suazo, albeit for a different crime than originally expected under the search warrant.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court denying Rodriguez-Suazo's motions to suppress evidence.