UNITED STATES of America,
Plaintiff–Appellee,

v.

Isadore GENNINGS, Defendant–
Appellant.

No. 02–3312.

United States Court of Appeals,
Sixth Circuit.

April 13, 2004.

Robert Brichler, U.S. Attorney's Office, Cincinnati, OH, for Plaintiff–Appellee.

Spiros P. Cocoves, Toledo, OH, for Defendant–Appellant.

Before MARTIN, CLAY and CUDAHY,* Circuit Judges.

CLAY, Circuit Judge.

Defendant was convicted following a jury trial of conspiracy to distribute a controlled dangerous substance, in violation of 21 U.S.C. § 846; interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1952; and possession with intent to distribute a controlled dangerous substance, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, and now appeals his sentence of 240 months in prison, arguing the district court erred in failing to determine Defendant's eligibility for the safety valve provision under § 5C1.2 of the sentencing guidelines; failing to have the reading of the jury instructions transcribed; and failing to grant Defendant's motion to suppress the fruits of an illegal traffic stop. For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part the district court's judgment and **REMAND** to the district court for further proceedings consistent with this opinion.

## BACKGROUND

### Procedural History

On February 7, 2001, Defendant and his confederates were charged in a four-count indictment with conspiracy to distribute a controlled dangerous substance, in violation of 21 U.S.C. § 846; interstate travel in aid of racketeering, in violation of 18 U.S.C. § 1952; and possession with intent to distribute a controlled dangerous substance, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. The fourth count in the indictment did not apply to Defendant. On February 15, 2001, Defendant entered not guilty pleas on all counts. Subsequently, on April 5 2001, Defendant reneged and pleaded guilty pursuant to a Federal Rule of Criminal Procedure 11 plea agreement. On June 25, 2001, Defendant moved to withdraw his guilty plea and the district court granted that request on July 26, 2001. On July 31, 2001, Defendant again pleaded not guilty to the counts in the indictment. On August 8, 2001, the government issued a superseding indictment listing the charges that applied to Defendant only. On August 16, 2001, Defendant entered not guilty pleas to the charges in the superseding indictment.

Pursuant to 21 U.S.C. § 851(e), the government filed an information on August 24, 2001, alleging Defendant had a prior narcotics-related felony, thereby subjecting

* The Honorable Richard D. Cudahy, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

Defendant to the possibility of an enhanced sentence. On October 2, 2001, Defendant then filed a motion to suppress the contraband discovered in the car being operated by Defendant as the fruits of an illegal traffic stop. A motion to suppress hearing was held on October 30, 2001, and the district court denied Defendant's motion by written order. A four-day jury trial then ensued after which Defendant was found guilty of all three counts in the superseding indictment. On March 19, 2002, Defendant was sentenced to 240 months imprisonment, the mandatory minimum under the sentencing guidelines for Defendant's convictions. That same day Defendant filed a timely notice of appeal.

### Facts

In February of 2000, Defendant Isadore Gennings moved from Chicago, Illinois, to Cincinnati, Ohio, with his girlfriend, and co-Defendant, Nekia Barney. Barney knew co-Defendants Christopher Anderson and Lashon Patterson from the time she lived in Chicago; she knew they were drug dealers but had had no contact with them for years. Anderson telephoned Barney in September of 2000 and told her that he was in Cincinnati; he asked Barney to meet him at a bar in Cincinnati and introduced her to two friends named Maurice Addison and Jerome Lundy, whom he said sold drugs for him. Approximately two months later, Defendant was introduced to Anderson, whom Defendant assisted in distributing cocaine. On January 28, 2001, Defendant and Barney participated in a drug transaction that required a trip to Indiana. The plan was executed as follows: Addison and Lundy delivered a blue Camaro to Defendant in Cincinnati; Defendant and Barney then drove to Indiana and checked into a motel. Defendant then summoned Patterson and Anderson by telephone, telling them that he had arrived at the motel. When Patterson came to the

motel, Defendant gave Patterson a key to the Camaro. Patterson then drove the car to particular location, removed money from a hidden compartment in the Camaro, secreted an illicit substance in the hidden compartment, drove the car back to the motel, and then called Defendant and told him the car was ready. Around 4 a.m. on January 29, 2001, Defendant and Barney then departed from the motel in the Camaro en route to Cincinnati.

That same morning, sergeant Greg Morgan of the Regional Narcotics Unit ("RENU") was working traffic enforcement in the vicinity of Interstate 74 and Interstate 275 in Cincinnati. Before long, the sergeant observed the Camaro abruptly change lanes without signaling, causing a large truck to aggressively brake. The sergeant's laser radar unit clocked the Camaro's speed at 71 miles per hour, six miles above the posted speed limit. A computer search revealed that although the Camaro had Illinois plates, it was not registered with the Illinois motor vehicle department. The sergeant then made a traffic stop of the Camaro and made the routine requests for registration and license. Defendant could not display a driver's license, a vehicle registration, or an insurance card. The sergeant made additional computer searches and learned that Defendant's license was suspended and the vehicle unregistered. On separate occasions during the traffic stop, Defendant and Barney gave the sergeant conflicting information regarding their reason for traveling.

The sergeant then asked Defendant if there were any drugs or weapons in the car and Defendant answered in the negative. Defendant then gave the sergeant consent to search his car and at that time another officer arrived with a narcotics dog that sniffed the interior of the car and alerted to narcotics in the vehicle. Offi-

cers then impounded the vehicle and a search revealed ten kilograms of cocaine hidden in an area connected to a speaker box. Defendant was then arrested and after having his *Miranda* rights read to him, he confessed to officers that he was working for Patterson and Addison and that he had to return the Camaro to Addison. Officers permitted Defendant to telephone Addison and return the Camaro, thereby permitting officers to arrest both Addison and Lundy. Patterson was able to elude apprehension. Defendant filed this timely appeal after his motion to suppress the fruits of the traffic stop was denied.

## DISCUSSION

■ Defendant first argues that the district court erred in failing to consider whether it could depart downward from Defendant's mandatory minimum sentence pursuant to § 5C1.2 of the sentencing guidelines. The application of the sentencing guidelines to a particular set of facts is reviewed under a *de novo* standard. *See United States v. Bolka*, 355 F.3d 909, 911 (6th Cir.2004); *United States v. Penn*, 282 F.3d 879, 881 (6th Cir.2002).

At his sentencing hearing, Defendant requested that the district court depart downward from the mandatory minimum and impose a sentence consistent with the sentencing guidelines pursuant to § 5C1.2. The district court concluded that it had "no discretion to go below th[e] mandatory minimum, even though the guidelines might provide for a lesser sentence." (J.A. at 258–59). Defendant argues that the district court erred in concluding that it could not depart downward under the guidelines. The government concedes that the district court erred in concluding that it could not depart downward from a mandatory minimum sentence, but contends the error was harmless.

Pursuant to § 5C1.2—the so called "safety valve" provision of the guidelines— a district court should "impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5)." U.S.S.G. § 5C1.2.[1] The government concedes that the Defendant satisfies the first four criteria of 18 U.S.C. § 3553(f), but contends that Defendant failed to satisfy the fifth element of 18 U.S.C. § 3553(f), thereby making the dis-

1. 18 U.S.C. § 3553(f) provides:

Notwithstanding any other provision of the law, in the case of an offense under [21 U.S.C. § 841], the court shall impose a sentence pursuant to [U.S.S.G., 28 U.S.C. § 994] without regard to any statutory minimum sentence, if the court finds at sentencing ... that–
(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. [§ ]848; and
(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

trict court's error harmless. The fifth element of 18 U.S.C. § 3553(f) requires a defendant to truthfully convey to the government all information and evidence he or she has regarding the conduct that gave rise to the offense with which the defendant is charged. In *United States v. Adu*, 82 F.3d 119 (6th Cir.1996), we explained that a defendant bears the burden of proving that he or she is entitled to the "safety valve" provision of § 5C1.2. *See id.* at 122. In *United States v. Maduka*, 104 F.3d 891 (6th Cir.1997), we further reasoned that § 5C1.2 requires a defendant to "provide complete information" regarding "the offense of conviction and all relevant conduct." *Id.* at 894 (quoting U.S.S.G. § 5C1.2). The *Maduka* Court held that the district court did not commit clear error in concluding that the defendant was not entitled to a downward departure under § 5C1.2 because the defendant failed to provide complete information about his role in the criminal activity. *See id.* at 895. In a similar vein, we held in *Bolka* that the defendant failed to prove by a preponderance of the evidence that he did not possess a firearm in connection with the drug offenses with which he was charged. *See Bolka*, 355 F.3d at 912. Therefore, the *Bolka* Court determined that the district court committed harmless error by concluding that application of the sentencing enhancement provision for possession of a weapon, § 2D1.1(b)(1), "necessarily precludes" application of the "safety valve" provision under § 5C1.2. *Id.* at 914.

Assuming *arguendo* that we agree with the government that the district court committed harmless error in the instant case because Defendant could not satisfy the fifth element of 18 U.S.C. § 3553(f), the district court's refusal to discuss any of the elements for a downward departure under § 5C1.2 is hardly harmless. Defendant cites the Ninth Circuit decision in *United States v. Shrestha*, 86 F.3d 935 (9th Cir.1996), to say that his failure to fully cooperate with the government should not preclude him from satisfying the fifth element of 18 U.S.C. § 3553(f). The analogy to *Shrestha* is apt because in that case the Ninth Circuit rejected the government's argument that the defendant was not entitled to the application of the safety valve provision because he failed to cooperate with the government prior to trial. *See id.* at 940. The Ninth Circuit remanded the case for a determination as to whether the defendant qualified for a departure from the mandatory minimum under the safety valve provision of the guidelines. Although the burden of production as to application of § 5C1.2 remains with Defendant, Defendant was not given a chance to present his argument for a departure because the district court erroneously determined it could not depart from the mandatory minimum sentence. We believe the district court committed reversible error and therefore remand to the district court for a determination of whether Defendant met the criteria for a downward departure from his mandatory minimum sentence pursuant to the § 5C1.2.

■ Defendant's second argument concerns whether the district court committed error in not ordering the proceedings at trial to be transcribed as required by the Court Reporters Act, 28 U.S.C. § 753. Under the Court Reporters Act, 28 U.S.C. § 753(b), recording all proceedings in a federal criminal case is mandatory. Nevertheless, a district court's violation of this duty is not *per se* error and does not, without more, require reversal. *See United States v. Gallo*, 763 F.2d 1504, 1530 (6th Cir.1985), *cert. denied*, 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986).

Because Defendant did not object at trial to the district court's instruction that a copy of the jury instructions be attached to the record, instead of the proceedings being transcribed, this Court must review

whether the district violated the Act under the plain error standard. *See United States v. Wright,* 343 F.3d 849, 861 (6th Cir.2003) (applying plain error standard); *United States v. Treadway,* 328 F.3d 878, 883 (6th Cir.2003) (same). Under the plain error standard, a district court's decision will not be reversed unless (1) there was plain error; (2) the error was clear and obvious; and (3) the error affects substantial legal rights. *See Treadway,* 328 F.3d at 883. Assuming a movant proves plain error, we still exercise discretion to determine whether the plain error affected the integrity or public reputation of the judicial proceeding. *See id.*

■ Defendant's sole contention in connection with this claim is that the district court committed plain error by not transcribing the reading of the jury instructions to the jury. At trial, counsel on both sides stipulated that the jury instructions not be transcribed, "but rather that a copy of the charge be attached to the record." (J.A. at 262). Defendant claims his counsel made this stipulation because he did not want to be obtrusive before the jury and therefore acquiesced in having the jury instructions attached to the record. We believe the district court did not commit plain error because Defendant's substantial legal rights were not violated by the district court's failure to instruct the court reporter to transcribe the reading of the jury instructions to the jury.

Under the Court Reporters Act, a court reporter assigned to a criminal case "shall record verbatim ... all proceeding[s] in criminal cases had in open court." 28 U.S.C. § 753(b). In *Gallo,* we explained that a reviewing court must consider all the circumstances surrounding a district court's failure to abide by 28 U.S.C. § 753(b). *Gallo,* 763 F.2d at 1531. The *Gallo* Court observed that a defendant's personal consent or waiver of a claim of error to a district court's failure to record

all the proceedings in a criminal matter will not result in *per se* prejudicial error for failure to transcribe. *Id.*

Other circuits that have considered 28 U.S.C. § 753(b) in analogous contexts have held that a district court's failure to record the entire criminal proceeding will not result in *per se* reversal. *See, e.g., United States v. Taverna,* 348 F.3d 873, 880 (10th Cir.2003) ("reversible error occurs when 'the unavailability of a transcript makes it impossible for the appellate court to determine whether or not prejudicial error was committed' with regard to the challenged action"); *Lynch Inc. v. SamataMason Inc.,* 279 F.3d 487, 491 (7th Cir.2002); *United States v. Kelly,* 167 F.3d 436, 438 (8th Cir.1999) ("we find persuasive the reasoning adopted by the majority of the Courts of Appeals that some showing of prejudice is required before non-compliance with the Court Reporters Act necessitates a reversal of a defendant's conviction"); *United States v. Winstead,* 74 F.3d 1313, 1321 (D.C.Cir.1996) (noting failure to record or make full transcripts available does not result in a *per se* reversal requirement for violation of the Act); *United States v. Wilson,* 16 F.3d 1027, 1031 (9th Cir.1994) (noting that district court's failure to record entire criminal proceeding was not prejudicial because the defendant failed to demonstrate the "specific prejudice" he suffered).

■ In the instant case, Defendant fails to demonstrate that he suffered specific prejudice because the district court failed to transcribe the jury instructions that it read to the jury. Moreover, Defendant waived any claim of error he imputed to the district court by acquiescing in the district court's failure to transcribe the reading of the jury instructions to the jury. District courts should be cautioned, however, to abstain from violating the clear dictate of 28 U.S.C. § 753(b). *See Gallo,* 763 F.2d at 1531–32 ("we strongly 'suggest

that if the trial court needs to confer with counsel about rulings to be made from the bench, the safe course is to excuse the jury or retire to chambers and let the reporter record what takes place' "). This caution aside, we nonetheless conclude that the district court did not commit plain error by failing to transcribe the reading of the jury instructions to the jury.

■ Defendant's final argument is that his motion to suppress should have been granted because the stop and search of the Camaro was prodded by impermissible racial profiling. A district court's denial of a motion to suppress is reviewed under a mixed standard of law and fact. *See United States v. Rodriguez–Suazo*, 346 F.3d 637, 643 (6th Cir.2003); *United States v. Akridge*, 346 F.3d 618, 622 (6th Cir.2003). A district court's findings of fact will not be reversed unless clearly erroneous. *See Rodriguez–Suazo*, 346 F.3d at 642. A district court's legal conclusions will be reviewed *de novo. See id.* "When reviewing the denial of a motion to suppress evidence, we must consider the evidence in the light most favorable to the government." *Id.*

Defendant argues that the district court erred in denying his motion to suppress because the initial stop of the Camaro came about because he was black. Defendant argues that sergeant Morgan became suspicious of Defendant because of his race and the subsequent search and discovery of cocaine were fruits of an illegal search and seizure. Defendant cites no case to support this argument, but the undisputed facts of this case belies Defendant's assertion that an illegal search occurred here. The initial traffic stop of the Camaro was justified by Defendant's speeding and the Camaro's improper plates. *See Whren v. United States*, 517 U.S. 806, 814–18, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Defendant thereafter consented to the search of the vehicle and a narcotics dog alerted to the smell of contraband, which was later discovered hidden in the trunk of Defendant's vehicle. A consensual search of the vehicle does not violate the Fourth Amendment's prohibition against illegal searches and Defendant does not dispute that his consent was freely given. *See United States v. Lopez–Arias*, 344 F.3d 623, 626 (6th Cir.2003); *United States v. Wellman*, 185 F.3d 651, 657 (6th Cir.1999). The district court did not commit clear error by denying Defendant's motion to suppress the cocaine discovered after Defendant consented to a search of the Camaro.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part the district court's judgment and **REMAND** to the district court for a determination as to whether Defendant qualifies for a downward departure pursuant to § 5C1.2.