**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0487n.06

No. 18-3187

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 28, 2018
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| DELVON HOUSER, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |

Before: GILMAN, KETHLEDGE, and BUSH, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** The only issue in this direct criminal appeal is the validity of a search warrant. The warrant was based on an affidavit detailing, *inter alia*, the affiant's observation of the sale of a small amount of crack cocaine by defendant Delvon Houser to a confidential informant, which occurred after Houser exited his apartment, met the informant next to the apartment building to make the sale, and then returned to his apartment. The sole aspect of the warrant that Houser challenges is the sufficiency of the nexus between the incriminating evidence and the place to be searched. Houser pleaded guilty to one count of illegal possession of a firearm by a convicted felon based on evidence discovered and seized pursuant to the warrant. Because the warrant averred a sufficient nexus between the criminal activity and the residence to be searched, the district court properly denied the motion to suppress. Thus, we **AFFIRM** the judgment of the district court.

**I.**

On January 18, 2017, Detective Jose Alcantara, a then thirteen-year veteran law enforcement officer recently assigned as a detective in the Euclid Police Department Narcotics Unit, applied for a search warrant in the Cuyahoga County Court of Common Pleas. According to his supporting affidavit, on January 13, 2017, a confidential informant advised police that the informant was purchasing crack cocaine from a black male in a particular area of Euclid, Ohio. The informant told the police that the seller "drove a silver two door Chevy Monte Carlo bearing [specific] Ohio registration" information[1] and used a particular nickname, and the informant provided detectives with Houser's cellular phone number. Using this information, officers conducted a traffic stop of a car with the same make, model, and Ohio registration information as that supplied by the informant. Officers identified Houser as the driver of the vehicle and determined that he had prior convictions including felony drug trafficking, robbery, felonious assault, having weapons while under disability, possession of criminal tools, and tampering with evidence.

Within 72 hours, an undercover detective and the confidential informant set up a controlled buy of crack cocaine from Houser. First, the informant contacted Houser by telephone and advised that the informant wanted to purchase crack cocaine. Next, the informant and the undercover vehicle were searched before conducting the controlled buy, and, upon finding both drug-free, the informant was provided with a sum of previously recorded buy money. Undercover officers placed throughout Houser's apartment building kept constant surveillance of Houser. Officers witnessed Houser exit apartment "J" and meet the informant on the side of the apartment building. The confidential informant handed Houser the money, and Houser handed the informant an amount of

---

[1] This information was redacted in the affidavit attached in support of Defendant's Motion to Suppress.

purported crack cocaine. Officers witnessed Houser immediately return to apartment "J" after conducting the hand-to-hand transaction. The purported crack cocaine tested positive for .1 grams of cocaine (enough for one-time personal use). Using surveillance photos and a Bureau of Motor Vehicles photo, detectives "were able to determine that Houser was the male using the street name [provided by the informant, and] was the individual who sold crack cocaine" to the informant and undercover officer.

In the affidavit, Detective Alcantara further explained that, in his experience, "persons who traffic [] illegal drugs frequently keep weapons, such as firearms, for use against law enforcement officials, as well as other citizens. Therefore, it is also necessary to search for any weapons that may be present in the above-described premises." Moreover, Detective Alcantara averred that "based upon the nature of the activity and criminal history of drug abuse and drug trafficking" by the defendant, it is likely that the premises will contain controlled substances, money, weapons, or other contraband.

The state court issued the warrant. The Euclid Police Department executed the search warrant the next day. Inside apartment "J," officers found a "Taurus .38 caliber revolver, loose marijuana, digital scales, and .2 grams of crack cocaine residue." The Taurus .38 caliber revolver and the rounds of ammunition were manufactured in Brazil and traveled in interstate commerce. Also, according to the Presentence Report,

> [a] records check of the .38 Caliber Taurus revolver was conducted and it was discovered that the revolver had been stolen from the Village of Timberlake on April 22, 2016.
>
> Houser admitted to the ownership of the drugs and digital scales recovered from the apartment. He also admitted to being a drug dealer, and he stated he purchased the .38 caliber revolver in the streets for protection.

Houser was prohibited from possessing a firearm because of his previous convictions for robbery and felonious assault.

Accordingly, Houser was charged with one count of illegal possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). He subsequently moved to suppress all evidence seized from the search of apartment "J," arguing that "the investigative activities of the Euclid Police Department did not establish a sufficient nexus between [his] apartment and drug dealing activity," and that, accordingly, "there was insufficient probable cause for the magistrate to issue a warrant to search [his] apartment." (Mot. to Suppress, R. 16, Page ID # 51.) The district court denied Houser's motion, explaining that

> the affidavit establishes that the drug dealing was occurring near defendant's apartment and that the CI purchased drugs from defendant. In a transaction, monitored and verified by law enforcement, the CI purchased crack cocaine from defendant. To complete the transaction outside his apartment building, defendant was observed exiting his apartment and then returning to his apartment after conducting the transaction. On this basis, there was sufficient probable cause to search defendant's residence.

(Order, R. 18, Page ID # 72.)

This ruling on the motion to suppress prompted Houser to enter into a plea agreement, but in making the plea, Houser reserved his right to challenge the district court's ruling. The district court accepted the plea agreement and sentenced Houser to 92 months' imprisonment. Houser now appeals the district court's denial of his motion to suppress.

## II.

"The standard of review for determining the sufficiency of the affidavit is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (internal quotation marks omitted). "[L]egal conclusions as to the

existence of probable cause are reviewed *de novo*." *United States v. Combs*, 369 F.3d 925, 937 (6th Cir. 2004). A judicial officer's probable-cause determinations are entitled to great deference. *Rodriguez-Suazo*, 346 F.3d at 643. When the district court denies a motion to suppress, this court reviews all evidence in a light most favorable to the government. *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003).

The district court properly denied Houser's motion to suppress because the search warrant was supported by probable cause. Probable cause existed for the search of Houser's residence because the warrant affidavit established a nexus between the place to be searched and the evidence sought. *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (holding that a search warrant affidavit must establish a "nexus between the place to be searched and the evidence sought" (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998))). The affidavit explained that days before the search, the confidential informant had purchased drugs from Houser. The police corroborated the information the informant provided about Houser's nickname, phone number, car make and model, and Ohio registration information. The affidavit also stated that Houser had a previous drug-trafficking conviction. Finally, undercover officers watched Houser leave his apartment, walk directly to the informant and undercover officer who were beside the building, engage in the drug transaction, and then re-enter the residence.

In *United States v. Ellison*, a case with similar facts, we held that

[t]hese incriminating actions are inextricably connected to the residence for which the search warrant was sought. From these actions, the affiant and the issuing judge could infer that there was a fair probability that drugs were being stored in the residence or that drug trafficking was taking place from the residence, such that a search of the residence would be likely to yield contraband or evidence of a crime. This showing of a fair probability is all that is required to justify the issuance of a search warrant.

632 F.3d 347, 349 (6th Cir. 2011); *see also United States v. Jones*, 159 F.3d 969, 974–75 (6th Cir. 1998) ("In this case, the fact that the incidents referred to in the affidavits took place on the premises rather than inside the house does not invalidate the search of the house."). In *Ellison*, a reliable informant observed two individuals engage in a drug transaction outside of a residence. 632 F.3d at 348. The informant witnessed one individual, "Short," exit the side door of a residence and meet with another individual outside. *Id.* The informant observed "Short" give the other individual a large quantity of cocaine in a plastic bag, and then "Short" returned to the residence. *Id.* The informant provided this information to the police, the police obtained a search warrant for the defendant's residence, and they subsequently found incriminating evidence inside the home. *Id.* The district court denied the motion to suppress, and we affirmed, holding that "[t]he affidavit explained that a confidential informant had observed someone come out of [the defendant's] residence, engage in a drug transaction, and then return into the residence." *Id.* at 349. "Commission of a drug transaction outside of a house and one participant's walking back into the house . . . plainly demonstrated a sufficient nexus with the house." *Id.*

Similarly, here, the warrant affidavit averred that officers witnessed Houser leave from and then return to his apartment immediately before and after selling crack cocaine, thus establishing a sufficient nexus to search the residence. Although in the instant case the quantity of drugs sold in the transaction triggering the home's search is less than in *Ellison*, here, the affidavit contains additional evidence supporting a nexus of drug dealing to the searched residence that the affidavit in *Ellison* lacked. For instance, in *Ellison*, the informant was the one who witnessed the defendant engage in a drug transaction and return to the residence; here, undercover officers witnessed Houser leave his apartment, engage in the transaction, and then return to his apartment. *See United*

*States v. Boyd*, 735 F. App'x 202, 205 (6th Cir. 2018) ("The officers' first-hand observations of the drug sale established probable cause that [the defendant's] apartment contained drugs . . . .").

Houser claims that the affidavit was deficient because it did not establish that Houser was a known drug dealer, such as "indicating that, for example, he regularly sold drugs, possessed large amounts of cash, paraphernalia, or other signs of trafficking, or was a member of a larger drug organization." (Appellant Br. 8.) Houser points to no authority requiring this particular information to determine an individual's status as a drug dealer. Moreover, under the totality of the circumstances, the information in the affidavit was sufficient to establish that Houser was engaged in dealing drugs. Not only does it state that Houser had been convicted of a drug trafficking offense, but also that the informant advised police that the informant was purchasing crack-cocaine from an individual (verified as Houser by the police), and officers set up a controlled buy within 72 hours in which Houser again dealt drugs to the informant and undercover officer. *See United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (noting that we have found a sufficient nexus between illegal drug activity and a residence when "the affidavits contained an additional fact that permitted the magistrate to draw the inference that evidence of wrongdoing would be found in the defendant's homes—namely, the independently corroborated fact that the defendants were known drug dealers at the time police sought to search their homes"). Thus, evidence of Houser's multiple instances of drug dealing, including the controlled buy beside his apartment building 72 hours before issuance of the warrant, established that Houser was suspected of involvement in drug trafficking and that there was "a fair probability" that evidence of his crimes would be found in his residence. *Carpenter*, 360 F.3d at 594.

Houser points to *United States v. Brown* as authority establishing that his status as a known drug dealer cannot provide probable cause to search his home. In *Brown*, we explained that "[w]e

have never held . . . that a suspect's 'status as a drug dealer, **standing alone**, gives rise to a fair probability that drugs will be found in his home.'" 828 F.3d 375, 383 (6th Cir. 2016) (emphasis added). In the instant case, the affidavit avers more than Houser's status as a drug dealer. The warrant affidavit here established exactly what was missing in *Brown*: undercover officers, as well as the informant, actually observed a drug deal occurring beside Houser's residence, thus independently corroborating Houser's status as a dealer. That officers witnessed Houser depart from and reenter his apartment, while dealing drugs to the informant next to his apartment building, establishes the requisite nexus to search his residence.

Houser contends that the small quantity of drugs he sold fails to create probable cause because in *McPhearson*, the suspect was arrested on his front porch with 6.4 grams of crack cocaine and this court held that the warrant affidavit was insufficient to establish the requisite nexus. 469 F.3d at 520–21. Houser misconstrues the holding in *McPhearson*. There, we held that the warrant was deficient not based on the quantity of drugs the defendant possessed but because the affidavit in support of the warrant to search the defendant's home failed to show that the defendant was a drug dealer. *Id.* at 525–26. The affidavit explained only that officers found drugs in the defendant's pocket when they arrested him on an assault charge. *Id.* at 525. Unlike in *McPhearson*, as explained earlier, the facts in the affidavit demonstrated Houser was dealing drugs. Houser not only sold crack cocaine during the controlled buy, but the informant also told officers that the informant had previously purchased crack cocaine from Houser. Thus, because the affidavit attests that Houser engaged in drug transactions on at least two occasions, coupled with Houser's previous drug trafficking conviction, as well as the officers' own observations of

Houser departing his apartment, selling the crack cocaine on the side of his building, and returning to his apartment, the affidavit sufficiently satisfies the nexus requirement.[2]

Accordingly, we **AFFIRM** the district court's judgment.

---

[2] Because we find that the warrant affidavit was valid, we need not address the alternative good faith argument briefed by the parties.